UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KATIE HANSEN-NILSEN,

              Plaintiff,

v.                                                  5:15-CV-1258
                                                    (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

STANLEY LAW OFFICES, LLP               STEPHANIE VISCELLI, ESQ.
  Counsel for Plaintiff
215 Burnet Ave.
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.           KAREN CALLAHAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

       This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 17.) This case has proceeded in accordance with General Order 18.

       Currently before the Court, in this Social Security action filed by Katie Hansen-Nilsen ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 10, 13.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

I.     **RELEVANT BACKGROUND**

    A.     **Factual Background**

Plaintiff was 45 at the time of the hearing.  (T. 33.)  At the time of the hearing Plaintiff was attending community college.  (*Id.*)  Generally, Plaintiff's alleged disability consists of attention deficit disorder ("ADD"), attention deficit hyperactivity disorder ("ADHD"), depression, and a learning disability.  (T. 153.)  Her alleged disability onset date is August 27, 2012.  (T. 150.)  Her date last insured is December 31, 2016.  (*Id.*)  She previously worked as a caterer, a ramp agent, and a server.  (T. 154.)

    B.     **Procedural History**

On October 1, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act.  (T. 66.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 19, 2014, Plaintiff appeared before the ALJ, Marie Greener.  (T. 28-55.)  On May 28, 2014, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 9-27.)  On September 16, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-4.)  Thereafter, Plaintiff timely sought judicial review in this Court.

    C.     **The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 14-23.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2016 and Plaintiff had not engaged in substantial gainful activity since August 27, 2012. (T. 14.) Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, a depressive disorder, and an anxiety disorder. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 16-17.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work. (T. 17-18.)[1] The ALJ determined that Plaintiff could understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with others in order to carry out simple tasks, and handle work-related stress in that she was able to make decisions directly related to the performance of simple tasks in the position with consistent job duties that do not require her to supervise or manage the work of others. (T. 18.) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 21-23.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ did not evaluate the medical opinion evidence according to the relevant legal standards and as a result the RFC assessment was the product of legal error and not supported by substantial evidence.  (Dkt. No. 10 at 11-17 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ did not evaluate Plaintiff's subjective statements in accordance with the relevant legal standards.  (*Id.* at 17-19.)  Third, and lastly, Plaintiff argues the ALJ should have consulted a vocational expert ("VE") because Plaintiff's non-exertional limitations were more than negligible.  (*Id.* at 19-21.)

### B.     Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues the ALJ properly considered the opinion evidence and her RFC finding was supported by substantial evidence.  (Dkt. No. 13 at 5-12 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ properly assessed Plaintiff's credibility.  (*Id.* at 12-14.)  Third, and lastly, Defendant argues Plaintiff could perform other work in the national economy.  (*Id.* at 14-16.)

## III.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

5

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV. ANALYSIS

As an initial matter, Plaintiff's argument opens with a discussion of evidence provided by doctors not found in the record. (Dkt. No.10 at 10-11 [Pl.'s Mem. of Law].) In addition, Plaintiff asserts that the ALJ improperly determined "medical equivalence" under the Listings at step three, without reference to the required medical expert opinion on the issue. (*Id.* at 10-11.) Plaintiff references pages of the ALJ's decision in which the ALJ made a step four finding, not step three. (*Id.*) Plaintiff appears to have made these statement in error and therefore they will not be addressed.

6

Plaintiff also cites to the "treating physician rule" located in the Regulations at 20 C.F.R. § 404.1527(d)(2) throughout her brief.  (*see generally* Dkt. No. 10 [Pl.'s Mem. of Law].)  The "treating physician rule" is now located at 20 C.F.R. § 404.1527(c)(2).  The change was effective March 26, 2012, due to a regulatory change that did not affect the substantive language of that section of the Regulation.  77 Fed. Reg. 10651-10657 (Feb. 23, 2012).

### A. The ALJ's Evaluation of Medical Opinion Evidence and RFC Determination

Plaintiff's RFC is the most she can still do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  In making an RFC determination, the ALJ will base her determination on an assessment of all the relevant evidence in the case record.  *See id.*  Further, Plaintiff's RFC is her maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis.  *See id.* at § 404.1545(b)-(c).  "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009).

In formulating an RFC the ALJ will afford weight to the medical opinion evidence in the record.  The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source.  20 C.F.R. § 404.1527(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv). The ALJ is required to set forth her reasons for the weight she assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff received her primary care from Lori Anderson, M.D. On February 13, 2014, Dr. Anderson completed a "Physical Residual Functional Capacity Questionnaire." (T. 455-459.) Dr. Anderson indicated that Plaintiff had the diagnoses of anxiety, severe dental disease and chronic pain. (T. 455.) Dr. Anderson indicated that Plaintiff experienced pain or other symptoms severe enough to "constantly" interfere with attention and concentration needed to perform simple work. (T. 456.) Dr. Anderson did not provide an opinion regarding Plaintiff's exertional and non-exertional limitations, referring to her opinion that Plaintiff was incapable of performing even low stress work. (T. 456-458.)

On July 18, 2012, Dr. Anderson completed a "Call-A-Bus" application. (T. 346-347.) Dr. Anderson indicated that Plaintiff was unable to drive a car due to her medication, and her oral surgery and nerve blocks in her neck and jaw limited her

8

mobility. (T. 347.) She checked boxes indicating that Plaintiff's vision, speech and communication, exposure to heat/cold/humidity/pollutants, ability to stand for up to ten minutes, orientation to time and place, short and long term memory, and problem solving skills were affected by her "disability." (T. 346.) Dr. Anderson wrote "[m]edication is the primary need for Call-A-Bus service [Plaintiff] gets disoriented." (*Id.*)

On November 15, 2012, Dr. Anderson completed a form for the Office of Adult Career and Continuing Education Services-Vocational Rehabilitation. (T. 453-454.) Therein, she indicated Plaintiff suffered from anxiety and had difficulty with focusing and time management. (T. 454.) Dr. Anderson wrote that Plaintiff should avoid "lifting, stressful situations." (*Id.*) Dr. Anderson stated that Plaintiff does not use public transportation because she owned a car. (*Id.*)

The ALJ afforded Dr. Anderson's statements "minimal weight." (T. 21.) The ALJ reasoned that the statements were "non-specific," and inconsistent with her treatment notes and the opinions of State agency consultants. (*Id.*) The ALJ stated that the 2012 statement was non-specific and did not provide adequate explanation. (*Id.*) The ALJ reasoned that Dr. Anderson's 2014 opinion only provided that Plaintiff was incapable of "low stress" work; however, the form failed to define low stress. (*Id.*)

Plaintiff's argument regarding the treatment of Dr. Anderson's opinions is threefold. First, Plaintiff argues that the ALJ committed legal error in her assessment of Dr. Anderson's opinions because she failed to apply the factors outlined in 20 C.F.R. § 404.1527(c). (Dkt. No. 10 at 16 [Pl.'s Mem. of Law].) However, Plaintiff does not specify which factors she contends the ALJ failed to apply. (*Id.*) Where the ALJ's reasoning and adherence to the Regulation is clear the Court does not require a slavish

9

recitation of each and every factor. *See Halloran v. Barnhart,* 362 F.3d 28, 31-32 (2d Cir.2004). It is apparent from the ALJ's decision that she adhered to the Regulations in evaluating the treating source opinion. For example, the ALJ acknowledged Dr. Anderson was Plaintiff's treating provider and reasoned her opinion was not consistent with the overall record. (T. 15); 20 C.F.R. § 404.1527(c)(2)(i),(iii). Therefore, the ALJ did not fail to apply the factors outlined in the Regulation.

Second, Plaintiff argues that the ALJ erred in affording minimal weight to Dr. Anderson's opinions because the ALJ failed to explain how Dr. Anderson's opinion was inconsistent with her treatment notations. (*Id.* at 15.) As an initial matter, Plaintiff relies on an opinion from Dr. Anderson that was not before the ALJ. (Dkt. No. 10 at 14-15 [Pl.'s Mem. of Law].) On October 23, 2014, approximately five months after the ALJ's decision, Dr. Anderson completed a medical source statement. (T. 461-463.) The October 2014 opinion was submitted to the AC and made part of the official transcript. (T. 4.) Plaintiff does not argue that the new evidence contradicted the ALJ's conclusion. (*see generally* Dkt. No. 10 [Pl.'s Mem. of Law]); *see Lesterhuis v. Colvin*, 805 F.3d 83, 88 (2d Cir. 2015). Further, as emphasized by Defendant, Plaintiff's brief does not discuss the assessments from Dr. Anderson that were before the ALJ. (Dkt. No. 13 at 7 [Def.'s Mem. of Law].) Therefore, the Court will focus on the medical evidence before the ALJ.

Although Plaintiff cites notations from the record which could support of her argument, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. (Dkt. No. 10 at 15 [Pl.'s Mem. of

Law]). Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

To be sure, in her analysis of Dr. Anderson's opinions the ALJ did not cite specific notations from her treatment records to support her conclusion. (T. 21.) However, "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Elsewhere in her decision, the ALJ noted that Dr. Anderson indicated that Plaintiff's anxiety was doing well with medication, that Plaintiff was cleared to be a full time student, and Plaintiff was doing better overall. (T. 19.) Indeed, Dr. Anderson noted that Plaintiff's mood was good and her emotions were "much better." (T. 305.) Dr. Anderson noted during Plaintiff's annual exam that she denied anxiety and depression. (T. 386.) Mental status examinations performed in August of 2013 and November of 2013 showed Plaintiff had clear speech, her thought process was logical, her associations were intact, she was alert and oriented, her attention span was appropriate, and her mood/affect was good. (T. 408, 421.) Where a

treating physician's treatment notes do not corroborate the physician's restrictive limitations, and were contradicted by other medical evidence, the Second Circuit has held that an ALJ may properly decline to accord that treating provider's opinion significant weight. *Kennedy v. Astrue*, 343 Fed.Appx. 719, 721 (2d Cir. 2009). Therefore, although the ALJ did not cite specific examples of conflicts in her analysis of Dr. Anderson's opinion, a reading of the decision as a whole provides substantial evidence to support the ALJ's determination that Dr. Anderson's treatment notations did not support her opinions.

Lastly, Plaintiff argues the ALJ erred in relying on the opinion of State agency medical examiner, Dr. Hochberg, because he did not review all of the medical evidence and he relied on the opinion of the consultative examiner which the ALJ discounted. (*Id.* at 16.) Plaintiff cites no authority to support her argument, nor does Plaintiff identified evidence post-dating Dr. Hochberg's review that would contradict the ALJ's finding. (*Id.*)

A non-examining state agency consultant's opinion may be relied upon where it is supported by other record evidence. *See Frey ex rel. A.O. v. Astrue*, 485 Fed.Appx. 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Swan v. Astrue*, No. 09-CV-486-S, 2010 WL 3211049, at *5 (W.D.N.Y. August 11, 2010) ("State agency medical consultants are qualified experts in the evaluation of disability claims and as such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Dr. Hochberg reviewed the record and completed a Mental Residual Functional Capacity Assessment on December 20, 2012. (T. 61-65.) Dr. Hochberg opined that Plaintiff had moderate limitations in her ability to: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; interact appropriately with the public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (T. 62-63.) Dr. Hochberg explained that in making his determination he relied on Plaintiff's reports of symptoms, mental status examinations in the record, Plaintiff's independence in her activities of daily living, and the exam and report of the consultative examiner. (T. 63.) Dr. Hochberg stated that based on the forgoing, Plaintiff retained the mental RFC to perform simple work in a setting that did not emphasize inter-personal communications. (*Id.*)

The ALJ afforded Dr. Hochberg's opinion significant weight. (T. 20.) The ALJ did not commit error in relying on an opinion from a source who did not review the entire record because Plaintiff failed to provide evidence from the record which would contradict the opinion. A review of the record before the ALJ failed to indicate that evidence received after Dr. Hochberg's opinion was rendered was materially different from the medical records reviewed by him. *See Camille v. Colvin*, 104 F. Supp.3d 329, 343-344 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x. 25, 28-29 (2d Cir. 2016) (ALJ did not err

in assigning great weight to state consultant's opinion where later treatment notes were not materially different from the medical records reviewed by the consultant).

For the reasons stated herein, and further outlined in Defendant's brief, the ALJ's mental RFC determination was made in accordance with the Regulations and supported by substantial evidence in the record. It is therefore recommended that the mental RFC determination be upheld.

### B. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. § 404.1529. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to

determine the extent to which the symptoms limit the claimant's ability to do work.  *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible.  (T. 19.)

Plaintiff argues that the ALJ did not apply the factors outlined in the Regulations and misconstrued Plaintiff's statements.   (Dkt. No. 10 at 17-19 [Pl.'s Mem. of Law].)  First, Plaintiff's brief failed to state with specificity which factors the ALJ failed to apply.  (*Id.*)  A review of the ALJ's decision indicated she did apply the factors.  For example, the ALJ outlined Plaintiff's past work history, her treatment and medication, and her activities of daily living.  (T. 19.)  Therefore, the ALJ did not fail to apply the factors outlined in the Regulations.

Second, the ALJ did not misconstrue Plaintiff's activities of daily living. The ALJ noted that Plaintiff testified that she was a full time student at a community college, she was able to cook, clean, organize papers, and watch TV. (T. 18.) The ALJ also relied on Plaintiff's Functional Report, in which Plaintiff indicated she was able to do laundry, make beds, take the dog for a walk, prepare meals, clean, go shopping weekly, take care of her personal needs, bake, drive, and travel independently. (T. 19.) The ALJ correctly noted Plaintiff's activities of daily living. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (substantial evidence supported ALJ's determination that plaintiff's subjective complaints were insufficient to establish disability because plaintiff was able to care for his child, he cleaned the house, drove, watched TV, read, and used the computer); *see also Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) ("The ALJ also relied on Cichocki's Daily Activities Questionnaire on which she indicated that she performed numerous daily tasks, such as walking her dogs and cleaning her house, that are consistent with a residual capacity to perform light work.)

Therefore, it is recommended that the ALJ's credibility determination be upheld because the ALJ adhered to the Regulations and the ALJ did not misconstrue Plaintiff's activities of daily living.

### C.    The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct.

1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work." *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir.2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir.2010)). A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala,* 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis." *Bapp* 802 F.2d at 605-606. Further, "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

At step five, the ALJ concluded that Plaintiff could perform other work in the national economy based on the Grids. (T. 22-23.) The ALJ specifically concluded that the additional limitations in Plaintiff's RFC had little or no effect on the occupational base of unskilled sedentary work. (T. 22.)

Plaintiff argues that the ALJ should have obtained testimony from a VE because Plaintiff had additional non-exertional limitations. (Dkt. No. 10 at 19-21 [Pl.'s Mem. of Law].) Plaintiff relies on her pervious arguments that the ALJ's mental RFC did not account for additional limitations. (*Id.*) However, for the reasons stated herein, the ALJ's mental RFC was supported by substantial evidence in the record.

17

Plaintiff then contends that Dr. Hochberg's opinion, that Plaintiff had "moderate" limitations in certain areas, were not negligible limitations. (*Id.*) The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); see *Whipple v. Astrue*, 479 Fed.Appx. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress. These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment.").

The ALJ properly relied on the Grids in making her step five determination and VE testimony was not required; therefore, it is recommended that the ALJ's step five determination be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 7, 2017

*Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge